Sneed, J.,
delivered the opinion of the Court.
The plaintiff was a Banking Corporation under the laws of this State, in the city of Memphis, ' on the 19th of January, 1862, and on that day discounted the defendant’s bill of exchange, drawn at four months, upon a commercial firm at New Orleans — payable to the order of W. B. Greenlaw & Co., and by that firm •endorsed to Sam Tate, by whom it was endorsed to the plaintiff. This action was to recover the amount •of said bill; in one count the declaration seeks to •charge the defendants upon the bill, and in another •upon the consolidated common money count, without reference to the bill as an evidence of the indebtedness. The verdict and judgment were in favor of the endorsees, and against the defendant as drawer, who alone appeals in error. The defense relied on is, that the money was borrowed by the defendant for the illegal purpose of enabling him to perform a contract entered into by him with the State of Tennessee, then at war with the United States Government, for the manufacture of arms to be used in the military service of the Southern States, in the late Civil War; and that the plaintiffs well knew the purpose for which the money was borrowed, and loaned the same with intent to give aid and assistance to the Southern Army. And the only question submitted for our determination is, whether, under the facts of the case, the plaintiff is entitled to recover. The plaintiff was a Branch of the Planters Bank of Tennessee at Nashville, and by a resolution of the parent Board, adopted *457 on the 8th day of September, 1861, had been authorized to lend money to the Confederate States for military purposes. That resolution was in the words following: “That while the exigences of war last, and threaten Memphis or its vicinity, the Board at Memphis shall be allowed a sound discretion, of itself, to make a temporary loan or loans, upon proper securities, to the Confederate States for military purposes, provided such loan or loans be proportioned to the amount of jive hwndred thousand dollars ($500,000), that branch’s capital; and provided, further, that they advise the parent bank of such loan or loans as early thereafter as they can, and consult them as to any further increase or extension of the' same.” The money sued for in this action was for the private and personal profit of the defendant, to enable him, as a manufacturer, to carry out a private contract for his own benefit, with the State, for a supply of arms for the use of the Southern armies. He became a witness in his own behalf, and testified that the bill sued on was given in renewal of another, drawn by him in September, 1861, and that upon offering the original for discount, he conferred with three or four of the Directory and explained fully, to them the objects and purposes of the loan, and they told him he could not have obtained the money for any other purpose. That after the discount the President expressed to him his gratification that he had succeeded in obtaining the money for that purpose. It was shown on behalf of the plaintiff that at the time of the original discount, most of the stockholders resided *458 in the Northern cities, and were separated by military lines from the Branch Bank at Memphis at that time, and so continued separated from the Bank and its assets until the close of the War, the assets having been carried south before the Federal occupation of Memphis, and retained within the Confederate lines until the close of the War. It does not appear that the owners and stockholders of the Bank ever knew of or consented to the loan to the defendant, or of any other loan made . or authorized to be made by the Directors in aid of the military power of the late Confederate States. This was a private loan of money to the defendant for his individual profit, and not a loan to the Confederate States under the resolution of the parent Bank of the 4th of September, 1861, and whatever might have been the feeling or opinion of a few individuals of the Directory in regard to the motives for the loan, it does not appear from the proof that the Board, as such, was influenced in making the loan by the mere motive of aiding the defendant in the alleged unlawful purpose of adding to the military power of the Southern States. The motives which actuated the Board in making the loan can only be determined by the record of its official action upon the subject, as shown in the following extract from its minutes, entered on the 17th of September, 1861, the day of the original discount í
“Branch of Planters Bank of Tennessee,
“Memphis, Sept. 17, 1861.
“A Board met, present, Sam Tate, John H. Speed, *459 G. W. Trotter, C. Kortrecht-, D. E. Cook, Jos. H. Shepherd, Vm. M. Farrington, E. T. Keel. The President, E. McDavitt, Esq., not being present, Mr. Sam Tate was called to the chair as President pro tern. The statement showing the condition of the Branch was read, whereupon the usual renewals for the month was ordered. The President pro tern., Mr. Sam Tate,, read a communication from Mr. Charles Jones, stating that he had contracted for the manufacture of arms-for the State, with the State, and to enable him to-push the work through as rapidly as possible, asked a loan of about $5,000 of this Bank, on bills at four and six months time, with approved endorsers, when, upon motion, the loan was unanimously granted. No other business being before the Board, on motion the Board adjourned.”
It will be observed that there were eight Directors present when this action was taken, and that the action was unanimous; and it is certainly true that the Board were advised of the purpose for which the defendant borrowed the - money, but it by no means follows that the Board agreed to make the loan for the purpose of giving “aid to the Southern States.” In order that the Board should be held to such a purpose, there must be some corporate act to show it. The loose expressions of three or four Directors made privately to the defendant, that he could not have obtained the money for any other purpose, can not be dignified into an official or corporate act that will bind the Bank. For the corporate act of the Bank *460 we must look to the record of its proceedings, had through its lawfully constituted Board of Directors. In looking to this, we are not prepared to say that the discounting of the bill in controversy for the defendant was not a legitimate banking operation. It was done in the interest of the corporation and for its profit and benefit. And we have no evidence whatever, in any corporate act, that it was done with any other view than than to benefit the Bank and to accommodate a customer. The recorded action of the Board of Directors does not show any other motive as a corporate act—and the unofficial declarations of a minority of the Board as individuals, can not. As the case is presented, then, the Bank undoubtedly had full knowledge of the purposes for which the money was borrowed—and this court has l'epeatedly held that mere knowledge in such case will not defeat a recovery. Puryear, Adm., v. McGavock et als., MS., * Nashville, 1871. This view of the case is decisive of it, even if we were to concede that such action on the part of the Board would have rendered the contract void— which we do not—and it is quite unnecessary to discuss other interesting questions which have been made in the argument, or to criticise certain alleged errors of law which have been assigned, as they do not and can not affect the merits of the case in the view we have taken of it. Let the judgment be rffirmed.